UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

JAMIR MORRIS,

       Defendant.
_____/

Case No. 2:24-cr-20339-2

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF No. 37)**

Jamir Morris is charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and with illegal possession of a machinegun under 18 U.S.C. § 922(o). Morris now moves to dismiss the felon-in-possession count under the Second Amendment, arguing that § 922(g)(1) is unconstitutional both on its face and as applied to him. ECF No. 37. Morris's motion was filed after the Sixth Circuit's decision in *United States v. Williams*, which held that § 922(g)(1) "is constitutional on its face and as applied to dangerous people." 113 F.4th 637, 662–63 (6th Cir. 2024). As explained below, Morris's motion will be denied because *Williams* forecloses facial challenges to § 922(g)(1) and because Morris's criminal history includes dangerous conduct, so § 922(g)(1) is constitutional as applied to him.

## I. BACKGROUND

Jamir Morris is currently 24 years old. He has four prior felony convictions: (1) a 2017 conviction for carrying a concealed weapon; (2) a 2018 conviction for carrying a concealed weapon; (3) a 2019 conviction for receiving and concealing stolen property—motor vehicle; and (4) a 2023 conviction for carjacking. ECF No. 37 at PageID.125.

Although Morris was convicted of carjacking in 2023 after pleading guilty, the offense conduct occurred in 2019, when Morris was 19 years old. *Id.* at PageID.126. The Michigan Department of Corrections Presentence Investigation Report (PSR) notes that Morris was alleged to have pointed firearms at several victims during the course of three carjackings in December 2019. ECF No. 51-4 at PageID.220–21 (sealed). Morris was on parole for the carjacking conviction when he was arrested for the instant felon-in-possession charge. ECF No. 51-5 (sealed). One of the conditions of parole was that he not possess firearms. *Id.* at PageID.230.

A criminal complaint was filed against Morris on June 13, 2024. ECF No. 1. He was first indicted on June 27, 2024, ECF No. 19, and then a superseding indictment was filed on July 9, 2024, charging him with felon in possession of a firearm and illegal possession of a machinegun, ECF No. 28. Morris filed a motion to dismiss the indictment's felon-in-possession count, ECF No. 37, which was fully

briefed, ECF No. 48; 57. The Court held a hearing on the motion on December 18, 2024.

## II. STANDARD OF REVIEW

Defendants may challenge a defect in an indictment by filing a motion to dismiss before trial. FED. R. CRIM. P. 12(b)(3)(B). Under Criminal Rule 12, before trial, defendants may raise "any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). Indeed, "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based," but focus only on the four corners of the indictment. *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001).

## III. DISCUSSION

Before considering the merits of Morris's arguments, it is worth briefly discussing the current legal landscape of firearm regulation.

### A. Firearm-Regulation Precedent

In 2008, the Supreme Court determined that the Second Amendment guarantees an individual right to keep and bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 598–600 (2008). At the time, *Heller* cautioned that no part of its holding "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," such as § 922(g)(1). *Id.* at 626.

But in the past several years, the legal landscape of firearm regulation has

changed dramatically. *See, e.g.*, *Williams*, 113 F.4th at 643–46 (detailing development of firearm-regulation precedent since *Heller*); *United States v. Jennings*, No. 2:24-cr-20173, 2024 WL 4560602, at *2 (E.D. Mich. Oct. 24, 2024) (same); *United States v. Lyle*, No. 23-cr-20098, 2024 WL 4819572, at *2 (E.D. Mich. Nov. 18, 2024) (same). Indeed, in 2022, the Supreme Court announced a two-step framework under which courts must evaluate the constitutionality of regulations implicating the Second Amendment. *See New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). Under the *Bruen* framework, courts must "first ask whether 'the Second Amendment's plain text' covers [the defendant's] conduct." *Williams*, 113 F.4th at 648 (quoting *Bruen*, 597 U.S. at 24). If it does, then the Government must "justify its regulation of that conduct by demonstrating that the regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24).

Recently, in *United States v. Williams*, the Sixth Circuit evaluated whether the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), is constitutional under *Bruen*'s two-step framework. *Id.* at 650–63. The court held that § 922(g)(1) is constitutional both on its face and as applied to people whose criminal history demonstrates dangerousness, *id.* at 662–63, because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," *id.* at 657.

As a result, when considering as-applied challenges under *Williams*, district courts must now evaluate "a defendant's dangerousness." *Id.* at 659. This inquiry is "fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 660. Courts may consider a defendant's "entire criminal record," *id.* at 659, which includes any evidence of "past convictions in the record, as well as other judicially noticeable information,"[1] such as prior convictions, *id.* at 660. It is the defendant's burden to show that he is not dangerous. *Id.* at 662.

To help guide the dangerousness inquiry, *Williams* went on to establish three "categories" of criminal activity for courts to consider:

1. People who have committed "a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery";

2. People who have committed "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary"; and

3. People who have committed "crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements."

*Id.* at 663.

A person falling into the first and second categories "will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* at 663. But that is not the

---

[1] A judicially noticeable fact is one that is "not subject to reasonable dispute" because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

case for the third category of crimes, which often "cause no physical harm to another person or the community." Given that fact, district courts should "have no trouble" concluding that many of the crimes in the third category do not make a person dangerous. *Id.* at 659.

### B. Challenges to *Williams*

Morris first challenges the *Williams* decision itself on several grounds, including that (1) it improperly forecloses facial challenges to § 922(g)(1), ECF No. 37 at PageID.115–17; (2) its holding that "dangerous people" can be permanently disarmed rests on faulty reasoning, *id.* at PageID.117–18; (3) its "dangerous person" test rests on a flawed interpretation of the historical record, and improperly places the burden on defendants to prove non-dangerousness, *id.* at PageID.118–25; (4) its interpretation of § 922(g)(1) renders the statute overbroad and thus facially unconstitutional, *id.* at PageID.128–29; and (5) its "dangerous person" test is void for vagueness, *id.* at PageID.129–33.

Whatever merit these challenges may or may not have, this Court remains duty-bound to apply *Williams* unless or until the Sixth Circuit or the Supreme Court says otherwise. These arguments must therefore fail.

## C. As-Applied Challenge to § 922(g)(1)

Turning, therefore, to whether § 922(g)(1) can be constitutionally applied to Morris, the Court finds that it can because his criminal history includes dangerous conduct. Morris's carjacking conviction alone is enough to support this conclusion.

Under Michigan law, a person who commits carjacking "uses force or violence or the threat of force or violence, or [] puts in fear" someone inside a motor vehicle in an attempt to steal it. MICH. COMP. LAWS § 750.529a(1). As this definition suggests, carjacking has a degree of dangerousness baked into it; the offense necessarily includes some use or threat of force or violence against another person. As such, in most cases (if not all), carjacking will be a crime "against the body of another human being" like murder, rape, assault, or robbery. Thus, the existence of the carjacking conviction is enough to find Morris's conduct dangerous, making § 922(g)(1) constitutional as applied to him.

What of the fact that *Williams* counsels against a "categorical" approach that focuses on the fact of a conviction alone? 113 F.4th at 633; *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024). True enough, *Williams* says that dangerousness determinations should be "fact specific" and should consider the "details of [a defendant's] specific conviction." This suggests that perhaps the Court should delve deeper into the underlying facts of Morris's carjacking conviction. But here, all of the facts in the record for that conviction come from an "Agent's Description of the

Offense" in a state presentence investigation report (PSR). The Court has reservations about accepting all information in a state PSR at face value, especially because those portions that simply restate a police report verbatim may contain untested accusations and hearsay. *See United States v. Johnson*, No. 2:23-cr-20569, ECF No. 40 (Jan. 16, 2025) (detailing this Court's concerns with considering unverified information from state PSRs). This would be a far cry from the "judicially noticeable information" that *Williams* deems appropriate to consider.

In any event, this case does not turn on whether the Court considers the PSR—the outcome is the same either way. The PSR would simply bolster the determination that Morris's conduct was dangerous, as it describes how he pointed guns at multiple victims during multiple carjackings. ECF No. 54-1 at PageID.220–21 (sealed). Further, nothing in the record suggests that Morris denies wielding firearms during the carjackings. If he did contest that fact, the Court would have expected the issue to be raised in the briefing or at the motion hearing, as such an argument could have helped Morris carry his burden of proving non-dangerousness. But the issue was not raised.

Nor does Morris really dispute that carjacking falls within *Williams's* first category of crimes against the person. Rather, he simply notes that he was only 19 years old at the time of the offense, and that it would be problematic to conclude he

is dangerous and thus strip him of a constitutional right based on actions he took in his youth, before his brain was fully developed. ECF No. 37 at PageID.126–27.

This point is well taken. Admittedly, there is an uneasiness to branding defendants as dangerous people—to passing upon not just their conduct, but their character, as the language in *Williams* seems to require.[2] Especially so when the defendant is young, as Morris is, and when that label (and its consequences) may follow him around for life, no matter how he changes or grows. But that is arguably what Congress endorsed in enacting § 922(g)(1): it justified a class-wide disarmament of people with felonies on the belief that they are dangerous. *See Williams*, 113 F.4th at 659 (noting that "the history of § 922(g)(1) shows that it grew out of concern for guns in the hands of dangerous criminals."). And, at the very least, defendants now have a chance to show that their possession of a weapon poses no danger to the community. *Id.* at 661 ("[W]hen the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization.").

---

[2] Although *Williams* phrased its analysis in terms of "dangerous people" and whether a person "is dangerous," at least one court has noted that, at bottom, this "analytical framework only asks about the dangerousness [of a defendant's] *conduct*." *Lyle*, 2024 WL 4819572, at *3 (citing *Williams*, 113 F.4th at 662, 660) (emphasis added); *see also United States v. Green*, No. 23-cr-20506, 2024 WL 4469090, at *3 (E.D. Mich. Oct. 10, 2024) ("[T]he court understands the *Williams* test to speak to the dangerousness of the crimes on a person's record, not to require an exhaustive presentation or hearing involving witnesses to test a defendant's present state of mind.").

In any event, here, Morris's age argument is not enough to carry his burden of proving non-dangerousness. Had the carjacking happened long ago, perhaps it would have been possible to assign the conviction less weight, as an older conviction would say less about whether Morris would once again act dangerously. *See Jennings*, 2024 WL 4560602, at *4 ("Common sense, however, strongly suggests [that convictions for violent crimes that occurred long ago] should be given less weight."). But here, the carjacking happened only in 2019. This is too recent to discount—particularly because Morris was still on parole for the carjacking when arrested in connection with the current charges.[3] And, really, carjacking would be dangerous regardless of the age at which Morris committed it.

For these reasons, § 922(g)(1) is constitutional as applied to Morris.

---

[3] Specifically, Morris possessed the firearm while on parole for a dangerous felony (the carjacking conviction), which violated his conditions of release. ECF No. 51-5. Indeed, this is another reason why Section 922(g)(1) is constitutional as applied to Morris. *See United States v. Goins*, 118 F.4th 794, 801–02 ("[O]ur nation's historical tradition of forfeiture laws . . . also supports disarming those on parole, probation, or supervised release.") (citing *United States v. Moore*, 111 F.4th 266, 269–72 (3d Cir. 2024)); *see also id.* at 798 ("Congress may lawfully disarm probationers . . . who (1) are under a firearm possession limitation as a condition of probation, (2) are under a relatively short probation sentence for a dangerous crime, and (3) whose repeated and recent actions show a likelihood of future dangerous conduct.").

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Morris's Motion to Dismiss the Indictment, ECF No. 37, is **DENIED**.

                                                  */s/Susan K. DeClercq*
                                                  SUSAN K. DeCLERCQ
                                                  United States District Judge

Dated: January 16, 2025